**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| GLORIA PINALES GARCIA, ) | No. ED CV 16-2592-PLA |
| Plaintiff, ) | **MEMORANDUM OPINION AND ORDER** |
| v. ) | |
| NANCY BERRYHILL, ACTING ) COMMISSIONER OF SOCIAL ) SECURITY ADMINISTRATION, ) | |
| Defendant. ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on December 19, 2016, seeking review of the Commissioner's[1] denial of her application for Disability Insurance Benefits ("DIB"). The parties filed Consents to proceed before a Magistrate Judge on January 9, 2017, and August 29, 2017. Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on August 24, 2017, that addresses their positions concerning the disputed issues in the case. The Court has taken the

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy Berryhill, the current Acting Commissioner of Social Security, is hereby substituted as the defendant herein.

Joint Submission under submission without oral argument.

## II.

## **BACKGROUND**

Plaintiff was born on August 12, 1961. [Administrative Record ("AR") at 173, 786.] She has past relevant work experience as a dental assistant. [AR at 786, 838-39.]

On December 31, 2009, plaintiff protectively filed an application for a period of disability and DIB, alleging that she has been unable to work since April 1, 2008. [AR at 19, 173.] After her application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [AR at 19, 96-97.] A hearing was held on February 16, 2012, at which time plaintiff appeared represented by an attorney, and testified on her own behalf. [AR at 36-72.] A vocational expert ("VE") also testified. [AR at 63-71.] On February 24, 2012, the ALJ issued a decision concluding that plaintiff was not under a disability from April 1, 2008, the alleged date of onset, through December 31, 2010, the date last insured. [AR at 19-33.] Plaintiff requested review of the ALJ's decision by the Appeals Council, which was denied on October 16, 2013. [AR at 9-13, 15.] Plaintiff filed an action with this Court in case number CV 14-5070-PLA, and on March 26, 2015, this Court remanded the matter. [AR at 905-25; see also AR at 926-29 (Appeals Council Remand Order).] On July 15, 2016, a remand hearing was held before a different ALJ, at which time plaintiff again appeared represented by an attorney and testified on her own behalf. [AR at 793-852.] A medical expert ("ME") and a different VE also testified. [AR at 800-22, 837-48.] On September 8, 2016, the ALJ issued a decision concluding that plaintiff was not under a disability from April 1, 2008, the alleged onset date, through December 31, 2010, the date last insured. [AR at 770-87.] At that time, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.984. This action followed.

/

/

/

# III.
# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (citation and internal quotation marks omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (citation omitted); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (citation and internal quotation marks omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (citation and internal quotation marks omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.") (citation omitted).

# IV.
# THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir.

## A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996. In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. Id. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

## B. THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity

during the period from April 1, 2008, the alleged onset date, through December 31, 2010, her date last insured. [AR at 772.] At step two, the ALJ concluded that plaintiff has the following severe impairments:

> [D]isc disease of the lumbar spine with history of lumbar fusion surgery in 2004; degenerative joint disease of the left knee, requiring surgery on October 27, 2011; hypertension; obesity; major depressive disorder; and pain disorder due to general medical condition.

[Id.] The ALJ also found that plaintiff's alleged symptoms of gastroesophageal reflux disease ("GERD") and gastritis were not medically determinable impairments, and her sleep apnea was non-severe. [AR at 773.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listings. [Id.] The ALJ stated that she specifically considered whether plaintiff meets or equals Listings 1.02, 1.04, 4.00, and 12.04, as well as the effects of plaintiff's obesity on the severity of her symptoms. [AR at 773-74.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform light work as defined in 20 C.F.R. § 404.1567(b),[3] as follows:

> [She] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk for 4 hours out of an eight-hour workday with normal breaks; she can sit for 4 hours out of an eight-hour workday with normal breaks; she is limited to frequent (not constant) with respect to pushing and/or pulling with the upper extremities; she cannot climb ladders, ropes, or scaffolds; [she] can occasionally climb ramps and stairs and is limited to occasional in all other postural activities (except for crawling); [she] can frequently reach in all directions; [she] would need

---

[2] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

a sit/stand option allowing her to sit and stand at the workstation provided that they [sic] were not off task more than 10% of the worktime (can stand, stretch, rock back and forth, and sit down); [she] can never crawl; [she] can perform frequent handling and fingering bilaterally; she should avoid more than occasional concentrated exposure to hazardous moving machinery and unprotected heights; [she] is limited to unskilled work; and she can have no more than occasional contact with coworkers and the general public.

[AR at 776.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform any of her past relevant work as a dental assistant. [AR at 786, 838-39.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as a "marking clerk" (Dictionary of Occupational Titles ("DOT") No. 209.587-034), "routing clerk" (DOT No. 222.587-038), and "mail clerk" (DOT No. 209.687-026). [AR at 787, 838-46.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of April 1, 2008, through December 31, 2010, the date last insured. [AR at 32.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when she: (1) failed to comply with the directives of this Court on remand (a) to either credit plaintiff's testimony as true, or provide specific, clear and convincing reasons for discounting or rejecting any testimony; and (b) to reconsider all of plaintiff's limitations in making an RFC determination, "including any limitations as a result of the severe impairment of pain disorder"; and (2) failed to include all of plaintiff's limitations in her hypotheticals to the VE. [JS at 3.] As set forth below, the Court agrees with plaintiff , in part, and remands for further proceedings.

**A.     SUBJECTIVE SYMPTOM TESTIMONY**

Plaintiff contends the ALJ failed to articulate legally sufficient reasons for rejecting plaintiff's subjective symptom testimony, in violation of the Court's remand order. [JS at 4-39.]

On March 28, 2016, *before* the ALJ's current assessment in this case, Social Security

Ruling ("SSR")[4] 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p supersedes SSR 96-7p, the previous policy governing the evaluation of subjective symptoms. Id. at *1. SSR 16-3p indicates that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character[;] [i]nstead, we will more closely follow our regulatory language regarding symptom evaluation." Id.; see also Trevizo v. Berryhill, __ F.3d __, 2017 WL 4053751, at *9 n.5 (9th Cir. Sept. 14, 2017), amending 862 F.3d 987 (9th Cir. 2017). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10. The ALJ is instructed to "consider all of the evidence in an individual's record" "to determine how symptoms limit ability to perform work-related activities." Id. at *2. The Ninth Circuit in Trevizo noted that SSR 16-3p "makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after [the ALJ] find[s] that the individual has a medically determinable impairment(s) that could reasonably be expect to produce those symptoms,' and 'not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.'" Trevizo, 2017 WL 4053751, at *9 n.5. (citing SSR 16-3p).

To determine the extent to which a claimant's symptom testimony must be credited, the Ninth Circuit has "established a two-step analysis." Id. at *9 (citing Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. (quoting Garrison, 759 F.3d at 1014-15);

---

[4] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)) (internal quotation marks omitted). If the claimant meets the first test, and the ALJ does not make a "finding of malingering based on affirmative evidence thereof" (Robbins, 466 F.3d at 883), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit . . . her ability to perform work-related activities . . . ." SSR 16-3p, 2016 WL 1119029, at *4. An ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony about the severity of her symptoms. Trevizo, 2017 WL 4053751, at *9 (citing Garrison, 759 F.3d at 1014-15); Treichler, 775 F.3d at 1102.

Where, as here, plaintiff has presented evidence of an underlying impairment, and the ALJ did not make a specific finding of malingering[5] [see generally AR at 770-87], the ALJ's reasons for rejecting a claimant's credibility must be specific, clear and convincing. Trevizo, 2017 WL 4053751, at *9 (citing Lingenfelter, 504 F.3d at 1036); see also Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014) (citing Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012)); Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). The ALJ's findings "'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" Brown-Hunter, 806 F.3d at 493 (quoting Bunnell v. Sullivan, 947 F.2d 345-46 (9th Cir. 1991) (en banc)).

Here, the ALJ discounted plaintiff's subjective symptom testimony for the following reasons: (1) the objective medical evidence did not support plaintiff's statements; (2) plaintiff's daily

---

[5] The ALJ did not make a specific finding of malingering, but instead noted that the psychiatric consultative examiner suggested plaintiff "was engaging in possible malingering or misrepresentation," based on the examiner's finding that plaintiff's results on the "Credibility Scale" "raise[d] doubts about how candid, straightforward, objective, and reasonable, plaintiff is in relaying information about herself." [AR at 778 (citing AR at 395).] The ALJ does not give a complete portrayal of the psychiatric consultative examiner's findings as the examiner went on to note that plaintiff's "pattern of responses suggests that she tends to portray herself as being relatively free of common shortcomings," and to repress undesirable characteristics, but that "*there is no evidence to suggest that [plaintiff] was motivated to portray herself in a more negative or pathological light than the clinical picture would warrant.*" [AR at 397-98 (emphasis added).]

8

activities, including light housework with breaks, driving her son to school daily, taking care of foster children, bowling, and knitting, were inconsistent with her claim of incapacitating impairment; (3) despite plaintiff's complaints of persistent pain, she did not walk with a limp, "or any apparent distress," at the hearing, or use an assistive device when she walked, even though she did not take her pain medications the morning of the hearing, and took several breaks from sitting, to walk during the hearing; and (4) plaintiff inconsistently stated that she was able to sit for 20-30 minutes, but sat for 45 minutes in the car on the way to the hearing. [AR at 784 (citations omitted).]

The Court finds that none of these reasons are specific, clear and convincing reasons to discount plaintiff's subjective symptom testimony.

### 1. Objective Medical Evidence

The ALJ stated that the objective medical evidence did not support plaintiff's statements. [AR at 784.] While a lack of objective medical evidence supporting a plaintiff's subjective complaints cannot provide the only basis to reject a claimant's subjective symptom testimony (Trevizo, 2017 WL 4053751, at *10 (quoting Robbins, 466 F.3d at 883)), it is one factor that an ALJ can consider in evaluating symptom testimony. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his credibility analysis."); accord Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Here, the ALJ stated her conclusion that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [AR at 778.] In support, she observed that plaintiff testified that she did not have residual symptoms from her two prior back surgeries (in 2004 and 2005); after plaintiff's 2007 slip and fall -- which is the incident she attributes her disability to -- plaintiff "did not have any surgeries despite her allegations"; plaintiff acknowledged that spinal injections helped relieve her symptoms; and plaintiff's EMG/nerve conduction studies were normal, "which tends to undermine her allegation that she has radiculopathy." [AR at 784 (citing AR at 268, 289, 550-75).] She also noted that

despite plaintiff's claims of medication side effects, including the need to lie down for three hours, plaintiff did not regularly report such symptoms or side effects to her providing physicians. [Id.]

As the Ninth Circuit recently held, "an ALJ's 'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific finding in support' of that conclusion, is insufficient." Treichler, 775 F.3d at 1103 (citation omitted). The "ALJ must identify the testimony that was not [consistent], and specify 'what evidence undermines the claimant's complaints.'" Id. (citation omitted); Brown-Hunter, 806 F.3d at 493. Here, the ALJ did not identify the testimony she found not consistent and "link that testimony to the particular parts of the record" supporting her determination to discount plaintiff's subjective symptom testimony. Brown-Hunter, 806 F.3d at 494. In short, "[t]his is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited," nor can the error be found harmless. Id. at 493 (rejecting the Commissioner's argument that because the ALJ set out his RFC and summarized the evidence supporting his determination, the Court can infer that the ALJ rejected the plaintiff's testimony to the extent it conflicted with that medical evidence, because the ALJ "never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony") (citing Treichler, 775 F.3d at 1103, Burrell, 775 F.3d at 1138).

Indeed, the reasons stated by the ALJ are not convincing reasons for finding that the medical evidence does not support plaintiff's statements. For instance, the ALJ states that plaintiff testified she did not have residual symptoms from her two prior back surgeries as if that testimony somehow suggests that the surgery solved plaintiff's back issues. [AR at 784.] However, the ALJ also acknowledged that plaintiff attributes her current symptoms to a 2007 slip and fall [AR at 784], and that even after the hardware from her 2004 lumbar fusion surgery was removed in 2005, "[she] continued to present with complaints of back pain . . . [and] also complained of bilateral leg and knee pain." [AR at 778.] Additionally, although the ALJ states that plaintiff's EMG/nerve conduction studies were normal [AR at 784 (citing AR at 289)], the record is ambiguous on this point. First, the page cited to by the ALJ merely reflects the statement made by Jack H. Akmakjian, M.D., a Qualified Medical Examiner and plaintiff's orthopedic surgeon, that an EMG

nerve conduction velocity test was *pending* as of December 18, 2008 [AR at 289]; next, although on February 3, 2009, Dr. Akmakjian noted that an EMG/nerve conduction study conducted on January 15, 2009, had "normal findings," he nevertheless also stated that the "EMG is negative, but there is a neuropathic component" to plaintiff's low back and right leg pain. [AR at 284.] Further, Dr. Akmakjian noted that epidural injections "did help [plaintiff] *to some extent*" [AR at 262 (emphasis added)], which is not the same as stating that plaintiff's symptoms were completely relieved by the epidural injections for any extended period of time. Moreover, he also noted that despite the epidural injections plaintiff had received, plaintiff reported continuing pain across the lower back and discomfort. [Id.]

Additionally, the ALJ fails to explain how plaintiff's failure to undergo surgery after 2007 somehow undermines her subjective symptom testimony. In fact, on August 19, 2008, Dr. Akmakjian stated that epidural injections might "reduce the need for surgery," and emphasized that "[w]e are not contemplating surgery what so ever." [AR at 551.] Further, as noted by the ALJ, plaintiff's degenerative joint disease of the left knee in fact required surgery on October 27, 2011. [AR at 772.] At the first hearing, plaintiff testified that although Dr. Akmakjian was concerned that the disc above the earlier fusion site was damaged, it did not appear that he had indicated to plaintiff that surgery was warranted at that location. [AR at 871-72; but see AR at 703 (August 20, 2010, report noting that plaintiff "is a surgical candidate and as such requires a lumbar discography procedure"[6]).] It is not clear whether this procedure was ever authorized.

With respect to the ALJ's finding that the medical records allegedly failed to reflect that plaintiff complained to her doctors about her medication causing her to sleep during the day, when asked about this at the hearing plaintiff explained that she *did* tell her treating physicians that her medications made her sleepy, and they explained to her that this was a normal side effect of those medications. [AR at 833.] Moreover, the record shows that on October 13, 2009, the agreed

---

[6] A lumbar discography is a technique used to evaluate patients with back pain, to determine if an abnormal disk in the spine is causing back pain. *http://www.mayoclinic.org/tests-procedures/ discogram*. In the test, dye is injected into the center of the disk or disks to pinpoint the cause of back pain. Id.

medical examiner, Ian D. Brodie, M.D., an orthopedic surgeon, noted that plaintiff reported difficulty with sleeping, and that she "wakes up tired and is sleepy every day" [AR at 713]; on March 16, 2011, the state agency medical consultant also noted that plaintiff had complained of "staying in bed all day" during her psychiatric consultative examination on July 7, 2010 [AR at 541]; and plaintiff again reported "difficulty sleeping," at her December 10, 2010, agreed internal medicine medical evaluation [see AR at 362 (noting plaintiff reported "difficulty sleeping" at night, and stated she "takes a nap and has daytime fatigue" during the day).]

Based on the foregoing, this was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

### 2. Daily Activities

With respect to plaintiff's daily activities, the ALJ stated the following:

> [M]any of the physical and mental abilities and social interactions required in order to perform [plaintiff's] daily activities are the same as those necessary for obtaining and maintaining employment and are inconsistent with the presence of an incapacitating or debilitating condition. [Plaintiff's] ability to participate in such activities undermined the credibility of her allegations of disabling functional limitations. Although [plaintiff] alleged she felt constant pain, she admitted that she could perform some light housework with breaks. Moreover, she complained that driving to see her doctor once in a while was very difficult. She alleged she felt pain when she got in and out of the car and sometimes she lost sensation in her feet. Despite these claims, she admitted, among other things, she could drive her son to school every day, foster children, bowl, and knit.

[AR at 778 (citing AR at 393).] The ALJ also noted that plaintiff "reported wide activities of daily living, including fostering children," and that "[t]hese activities of daily living are inconsistent with [plaintiff's] allegations of inability to function mentally or physically." [AR at 784.]

While "[e]ngaging in *daily activities* that are incompatible with the severity of symptoms alleged can support an adverse credibility determination" (see Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014) (emphasis added)), there is virtually no information in the record about plaintiff's child care or fostering activities (which at the time of the second hearing only included caring for a *fourteen-year old* girl), her bowling or knitting hobbies/interests, and her previous activity of driving her son to school. [AR at 874 (see AR at 918 (the Court noted that this was not a convincing reason to discount plaintiff's testimony as there is no indication of how far plaintiff has

12

to drive to drop her son off at school)).] Indeed, "the mere fact that [plaintiff] cares for [a foster child] does not constitute an adequately specific conflict with her reported limitations." Trevizo, 2017 WL 4053751, at *12 (noting that even caring for small foster children still permitted the claimant to rest, take naps, and shower throughout the day, "all of which would be impossible at a traditional full-time job"). Neither does the ALJ explain how plaintiff's former activity of driving her son to school (which it appears she was no longer doing at the time of the second hearing [compare AR at 823-26 with AR at 874]), and her interests/hobbies of knitting or bowling (which plaintiff only described to the agreed medical-legal psychiatric examiner in her workers' compensation case as her "interests and hobbies," and not as *daily* activities), conflict with her reported limitations. Additionally, although the psychiatric examiner noted that gardening, knitting, and bowling were among plaintiff's interests and hobbies [AR at 393], that June 11, 2010, report specifically noted that plaintiff had testified at her March 5, 2009, deposition that she had not gardened in approximately nine months because to do so hurt her back and left knee, and that the last time she bowled was two years previously. [AR at 431.] And, there is no evidence in the record that plaintiff would sit and knit for any period of time beyond twenty to thirty minutes without feeling the alleged discomfort she reported with prolonged sitting. [See, e.g., AR at 831, 872, 875, 878-79.]

Based on the foregoing, this was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

### 3. ALJ's Observations

The ALJ also relied on her observations of plaintiff at the hearing to discount plaintiff's subjective symptom testimony. Specifically, she stated that plaintiff "did not appear at the hearing with an assistive device nor did a provider find that one was medically necessary." [AR at 784.] She also noted that plaintiff was "standing and pacing during the hearing," and "did so without a limp or any apparent distress despite indicating that she did not take any pain medications that morning." [Id.]

Although they may not form the sole basis for discrediting a claimant's subjective symptom

testimony, an ALJ may properly consider her own observations at the hearing as part of the subjective symptom testimony analysis. Orn v. Astrue, 495 F.3d 625, 639-40 (ALJ's personal observations may be used in "the overall evaluation of the credibility of the individual's statements"); Nyman v. Heckler, 779 F.2d 528, 531 n.1 (9th Cir. 1985) ("The ALJ's observation of [the claimant]'s demeanor was relevant to his credibility and was not offered or taken as a substitute for medical diagnosis."). However, these observations -- which the ALJ did not in any way link to plaintiff's subjective symptom testimony -- may not form the sole basis for discrediting that testimony. Orn, 495 F.3d at 639-40 (citation omitted).

As the Court does not find that any other reason given by the ALJ for discounting plaintiff's subjective symptom testimony was legally sufficient, even if this was a specific, clear and convincing reason to discount plaintiff's subjective symptom testimony -- which the Court does *not* find -- it would be the *only* such reason, which is not sufficient to support the ALJ's adverse subjective symptom testimony determination.

4.  **Inconsistent Statements**

The ALJ stated that plaintiff "alleged that she has limited ability to sit yet she drove herself to the consultative examination, which tends to show that she can sit for extended periods and use foot pedals with her lower extremities. [Her] husband drove her to the hearing, which was a 45 minute drive that did not involve stopping so she can clearly sit for at least 45 minutes." [AR at 784.]

Plaintiff's ability to sit in a car for 45 minutes, or to drive a car for any distance, is not inconsistent with her testimony that she can sit for only 20-30 minutes before she "automatically . . . start[s] to feel pressure on the lower back, shooting pain down the legs, and tingling, and like, hot needles and pins on my [thigh]." [AR at 878; see also AR at 872 (can usually sit for about 20 to 30 minutes at a time).] Neither is it inconsistent with her testimony that when sitting, she gets up and walks around because "get[ting] up, [and] walk[ing] around, . . . tends to kind of relieve [the pain] somewhat to where [she] can, at least after 10 minutes or so, sit back down and start all over -- [her] sitting" [AR at 831], or her testimony that when she is a passenger in a car she is

14

1 "constantly shifting sides and moving around [AR at 875]," and that if she is driving any distance
2 by herself she often stops and gets out to "walk it off," before continuing on [id.], and that she
3 believes that in an eight-hour day she could sit "probably about two hours . . . three max." [AR at
4 879.]

Based on the foregoing, this was not a specific, clear and convincing reason for discounting plaintiff's subjective symptom testimony.

### 5. Conclusion

As discussed above, the ALJ's subjective symptom testimony determination was not "sufficiently specific" to allow this Court to conclude that the ALJ rejected plaintiff's testimony on permissible grounds and did not arbitrarily discredit her testimony regarding pain and fatigue. Brown-Hunter, 806 F.3d at 493 (quoting Bunnell, 947 F.2d at 345-46). Remand is warranted on this issue.

## B. MEDICAL OPINIONS

Plaintiff contends that the ALJ erred in giving great weight to the opinion of Dr. Salek, an internal medicine specialist, whom plaintiff notes has no expertise with orthopedic problems such as those experienced by plaintiff, who reviewed no medical records, performed no x-rays or other scans, and who conducted only a "cursory superficial internal medicine examination." [JS at 15.] She contends that the ALJ should have given more weight to plaintiff's long-term treating orthopedist, Dr. Akmakjian, as well as agreed medical examiner Dr. Brodie, and failed to adequately explain why she did not do so. [JS at 16.]

Defendant counters these arguments. However, because the matter is being remanded for reconsideration of plaintiff's subjective symptom testimony, and the ALJ on remand must as a result reconsider plaintiff's RFC in light of her testimony, the ALJ must also reconsider on

remand the medical evidence of record.[7]

## C. HYPOTHETICAL TO THE VE

Plaintiff contends that a hypothetical question to the VE must include all of the limitations that are established in the record and, if the ALJ had properly credited plaintiff's testimony that plaintiff's sitting limitation is approximately 20 minutes without having to get up and move around, she would not have been able to perform the alternative work suggested by the VE and would have been found disabled. [JS at 40-44 (citing AR at 846).]

Defendant counters these arguments.[8] However, because the matter is being remanded for reconsideration of plaintiff's subjective symptom testimony and the medical evidence of record, and the ALJ must reassess plaintiff's RFC, the ALJ on remand must also determine at step five, with the assistance of a VE if necessary, whether there is alternative work available that plaintiff can still perform.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further

---

[7] The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R. § 404.1520c (not § 404.1527) for determining the persuasiveness of the medical evidence shall apply. The new regulations provide that after that date, the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. See 20 C.F.R. § 404.1520c; see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016). Because plaintiff's application for benefits was filed prior to March 17, 2017, these new regulations did not apply at the time the ALJ issued her decision. If appropriate, however, they shall apply on remand.

[8] Defendant conceded that the ALJ's finding that plaintiff was able to perform the marking clerk position was error because it required more than occasional contact with the public and coworkers, but argued that the error was harmless because plaintiff could still perform the other two occupations. [JS at 46 n.12.]

proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Lingenfelter, 504 F.3d at 1041; Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Benecke, 379 F.3d at 593-96.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, because the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting plaintiff's subjective symptom testimony, the ALJ on remand, in accordance with SSR 16-3p, shall reassess plaintiff's subjective allegations and either credit her testimony as true, or provide specific, clear and convincing reasons, supported by substantial evidence in the case record, for discounting or rejecting any testimony. Second, the ALJ on remand shall reassess the medical opinions of record.[9] Finally, based on her reevaluation of the entire medical record and assessment of plaintiff's subjective symptom testimony, the ALJ on remand shall reassess plaintiff's RFC and determine, at step five, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the national economy that plaintiff can still perform.[10] See Shaibi v. Berryhill, __ F.3d __, 2017 WL 3598085, at *6-7 (9th Cir. Aug. 22, 2017).

/
/
/
/

---

[9] If appropriate, the ALJ shall apply 20 C.F.R. § 404.1520c on remand. (See supra note 7).

[10] Nothing herein is intended to disrupt the ALJ's step four finding that plaintiff is unable to return to her past relevant work.

17

# VII.
# CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: September 18, 2017

*Paul L. Abrams*
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE